SERAFÍN MATOS RAMÍREZ, ETC., Plaintiff and Appellee, *v.* DAVID ANTONGIORGI, JR., ET AL., Defendants; SALIM A. FARAGE ET AL., Defendants and Appellants.

No. 8871. Argued April 13, 1944.—Decided July 3, 1944.

856

*Hugh R. Francis* and *F. J. Pérez Almiroty* for appellants. *Juan Alemañy Sosa* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

This is an appeal from a judgment for $3,000 entered in favor of the plaintiff against two of the defendants, Salim A. Farage and Great American Indemnity Co. Farage was held responsible because he owned the car operated by Emilio Enrique Pabón, which was one of two cars which injured the plaintiff in an accident which resulted in the suit herein. The Great American Indemnity Co. was held responsible on an accident insurance policy covering the car of Farage. Farage and the Company are the appellants here.

David Antongiorgi, Jr., another defendant, was the owner and driver of the other car involved in the accident in question. By paying the plaintiff $900, he obtained a release of his alleged liability. This release required the approval of the district court because the plantiff was a minor. The district court entered an order approving the terms of the release as compensating the plaintiff for the damages suffered by the plaintiff in being struck by Antongiorgi's car. The order of the lower court specifically recited that the case continue against the remaining defendants.

In the earlier cases at common law in many situations a release to one of a number of persons whose actions have caused a tort discharged the others, irrespective of the

intent of the parties. The Torts Restatement points out that this "frequently resulted in the unintended and unpaid-for discharge of one of the tortfeasors", and that "The rule is not consistent with the modern American point of view."[1] Section 885 of the Restatement therefore lays down the rule that a "valid release of one tortfeasor . . . discharges all others liable for the same harm, *unless the parties to the release agree that the release shall not discharge the others* . . .". (Italics ours.) Whether that rule obtains in Puerto Rico (See §1096, Civil Code, 1930 ed.) is not necessary to be determined in this case. We assume, without deciding, that under such a release as found herein, the plaintiff could continue to press his action against other codefendants, provided the plaintiff established all the requisites of a damage suit, including the negligence of such other codefendants and that the said negligence was the proximate cause of all or some of the injuries suffered by the plaintiff.

The appellants allege that the district court erred in not determining and fixing in its judgment and opinion the responsibility of defendant Antongiorgi. The lower court failed to do so, apparently on the theory that Antongiorgi had obtained a release from the plaintiff and was therefore out of the case. As already noted, we accept, as a proposition of law for the purposes of this case, that Antongiorgi could be eliminated from the case and that the case could then continue against the other codefendants. But in passing on the very questions which then remain in the case, i. e., (1) the alleged negligence of the driver of the other car, and (2) whether such negligence was the proximate cause of all or any of the injuries allegedly suffered by the plaintiff, the actions of Antongiorgi which culminated in his striking the plaintiff were, as we shall see, extremely pertinent to determination of the questions of whether the driver of the second car was negligent and which injuries, if any, were caused

---

[1] Torts, Restatement, Comment on §885, pp. 461, 2.

858

by him. The district court therefore should have given detailed consideration to Antongiorgi's actions.

We also note, before embarking upon a discussion of the facts of the case, that if it was developed at the trial that Antongiorgi, who was released, was negligent as alleged, in first hitting the plaintiff, Antongiorgi might well have been held liable, under all the circumstances of the case, for all the injuries suffered by the plaintiff, including those caused solely by the second car. "It is important to note that there are situations in which the earlier wrongdoer will be liable for the entire damage, while the later one will not. If an automobile negligently driven by defendant A strikes the plaintiff, fractures his skull, and leaves him helpless on the highway, where shortly afterward a second automobile, negligently driven by defendant B, runs over him and breaks his leg, A will be liable for both injuries, for when the plaintiff was left in the highway, it was reasonably to be anticipated that a second car would run him down." Prosser on Torts, ch. 8, p. 336. But the fact that Antongiorgi might have thus been held liable for all the injuries suffered by the plaintiff, including the damage done by the car operated by Pabón and owned by Farage, does not preclude suit against the latter for the injuries caused by the second car. As Prosser points out in the cited example, "B should be liable only for the broken leg, since he had no part in causing the fractured skull, and could not forsee or avoid it. . ."[2] We must therefore put to one side the question of whether Antongiorgi could have been held liable for all the injuries herein and determine whether Farage can be held liable under the facts of the instant case for the injuries resulting from the operation of his car. Postponing for the moment the question of whether the injuries allegedly separately inflicted by the two cars were or could be segregated by satisfactory proof, we turn first to the most vital ques-

[2] See cases cited in footnote 32, Prosser, *supra*, at p. 336, and footnote 10, *infra.*

tion in this case: was Pabón negligent in the operation of Farage's car?

We are confronted at the outset by a serious flaw in the story of the plaintiff's witnesses. In his complaint the plaintiff alleged that an automobile travelling from Mayagüez to San Germán and driven recklessly by defendant Antongiorgi at a speed of 50 kilometers per hour struck him while he was crossing the road [3] and knocked him down, rendering him unconscious. Yet at the trial the plaintiff and the only other witness of the plaintiff who testified on this matter asserted that the plaintiff was standing near the ditch on or about the spot marked X on the diagram which is set forth in the margin,[4] to the right looking from Ma-

---

[3] This allegation does not indicate whether he was crossing the road from south to north or viceversa.

[4]

yagüez to San Germán, with his pushcart of refreshments, and that he had no thought of crossing the road when he was struck by Antongiorgi's car.

The lower court apparently gave full credence, not only to the story of the plaintiff and this witness as to how the first episode herein—the car of Antongiorgi striking and knocking down the plaintiff—occurred, but also to the theory of the plaintiff as a whole. The district court found the following:

"From the allegations and evidence submitted by the parties, the Court finds as proved that on March 11, 1937, while plaintiff Serafín Matos Ramírez, then 13 years old, was engaged in the selling of sundry articles from his pushcart, which was stationed on the right side of the road, in front of the entrance to the Central Eureka, Km. 196, Hm. 6, Insular Road No. 2, Municipality of Hormigueros, he tried to change the position of the cart, and in so doing was hit by the right side of the bumper of an automobile travelling from Mayagüez to San Germán, driven by David Antongiorgi, Jr., and was thrown toward the left side of the road, where he remained unconscious. While he was thus lying there, he was struck by another automobile belonging to defendant Salim A. Farage, and driven by co-defendant Enrique Pabón . . . Pabón was driving the car at an excessive rate of speed, and in view of the special circumstances existing at the site of the accident, such as the conglomeration of people and vehicles coming out of and going into the Central, he took no precautions at all to safeguard and protect the persons and property at that place.

"Any conflict that might exist in the testimony as to the manner in which the accident occurred, is resolved by the Court in favor of the plaintiff, because the version of his witnesses was more logical and reasonable than that of the only witness for the defense, co-defendant Emilio Enrique Pabón, whose testimony had as its only purpose to try to prove that there was no negligence on his part in connection with the accident; but he ended by recognizing that he could have stopped and not run over the plaintiff, but by one of those errors one commits he did not believe it necessary to stop and he pressed on. The only, immediate, and proximate cause of the accident was, then, defendant Pabón's negligence, without any fault or negligence on the part of the plaintiff." [5]

---

[5] The above-quoted portion of the district court's five-page opinion contains the entire statement of the lower court on the issue of the negligence of Pabón;

On the other hand, Pabón, whose detailed testimony the district court expressly rejected, said that immediately prior to the accident the plaintiff crossed the road on a dead run from north to south (as indicated by the broken line from Y to X on the diagram), when he was hit at position X by the left-front mudguard of Antongiorgi's car and was thrown back in the same direction from which he had come—Z— when he was hit by Pabón's car. Pabón's testimony was in part as follows:

"Q. What happened to you? Tell the court what occurred.— A. While I was coming from San Germán to Mayagüez on that road, about forty or fifty meters before reaching the entrance to the Central Eureka I saw the conglomeration of people there coming and going, about quarter past twelve, and I stopped accelerating and reduced my velocity as much as I thought necessary. I saw a truck coming out of the road that leads to the Central . . . And on the same side on which I saw the truck I saw the boy Serafín Matos cross the road in a wild dash, without stopping to see if there was anybody coming from one direction or the other, and when he ran across, David Antongiorgi's car hit him so hard that he was thrown underneath my automobile. It all happened with the speed of lightning, because I would have otherwise been able to stop, for I was driving very slowly, as the law itself says it should be done . . .— Q. From where did the boy dash out to cross the road?—A. He came out of the Central, to cross the road where he said that he had a refreshment stand . . .—Q. At what rate of speed, more or less, were you driving when the accident occurred?—A. I was going very slowly.—Q. At how many kilometers per hour?—A. About twelve kilometers, ten or twelve kilometers. . . ."

As this court has had occasion to say in another case, "The physical facts developed at the trial convince us that the accident could not have occurred in the manner described by the complainant's witnesses"[6] upon whose testimony the district court presumably relied in reaching its conclusions. If Antongiorgi's automobile, travelling at an excessive rate

the remainder of the opinion deals with matters unrelated to the question of the negligence of Pabón.

[6] *Rivera* v. *Graham*, 34 P.R.R. 1, 2, 3.

of speed, hit the plaintiff with the right side of the bumper at or about point X, the conclusion is irresistible that the plaintiff's body could not have been thrown towards point Z, as the lower court found. It was therefore physically impossible for the accident to have happened as the district court says it did. If Serafín Matos was struck by the right bumper of Antongiorgi's car at point X, his body could have been hurled only to some point within the shaded area, and not toward D. The right of a district court to resolve conflicts in the testimony of witnesses does not include the right to find the physically impossible.

However, the physical impossibility of the version of the witnesses as to how the plaintiff was struck by the car operated by Antongiorgi is not decisive of this case. The crucial question here is whether Pabón was negligent in the operation of the car of Farage when he struck the plaintiff while the latter was lying unconscious in the road after he had been knocked down by the car of Antongiorgi. And that is precisely where the case of the plaintiff against the appellants finally founders—there is simply nothing in the record which justifies the finding of the lower court that Pabón in operating the car of Farage was negligent. Nor, we might add, is there anything whatsoever in the record to justify the statement of the district court that Pabón "recognized that he could have stopped and not run over the plaintiff . . . ".[7]

---

[7] The passage in the record on which the district court apparently based this conclusion appears at the close of a long and intensive cross-examination of Pabón, and was essentially the language of counsel rather than of Pabón. The record shows the following:

"A. It is not that I could not stop.

"Q. And what was it then?—A. It is that one believes, frequently, that one is not going to make certain errors. That can happen to you and to Your Honor who also drives a car. You believe that you are not going to hit a person going at five kilometers and it so happens that you hit him.

"Q. Then you could have stopped, because you were going so slowly, but for those errors that one commits . . . .

"A. I did not believe that there was any need to stop."

We have carefully examined the testimony of all the witnesses for the plaintiff, and find nothing in the record on which the judgment for the plaintiff could have been properly based. The testimony of the plaintiff himself sheds no light on our problem, as he never saw Farage's car.

Carlos Mercado, owner of the pushcart, was the witness who testified to a version of the accident which, we have. seen, was physically impossible. And while he testified that Pabón was driving fast, he also stated that both events occurred almost simultaneously. On cross-examination he replied to question after question calling for details that he did not "take notice" of those things. Moreover, he stated over and over again on cross-examination that he did not see the second car strike the plaintiff but that he "felt" the impact.

Pascual Beauchamp testified that Mercado was in his store getting change at the time the accident occurred; that Mercado had his back to the road; and that neither of them saw the accident, but that they "felt the impact".

Francisco Trinidad, a policeman, testified that the Antongiorgi car passed him driving at an excessive speed, but that he saw neither the Pabón car nor the accident.

The testimony of the aforesaid witnesses was all the

This passage does not mean what the district court says it means. By "error", as used in the context of this testimony, Pabón obviously meant not "negligence" on his part, but simply that as a matter of hindsight he now recognized that if he had stopped completely, the accident would not have occurred. But the question is whether, at the time of the accident, he could have reasonably anticipated that such was the situation. The whole tenor of the testimony, as we shall see, is to the contrary; all the testimony, including that of the witnesses for the plaintiff, was to the effect that both episodes happened almost simultaneously—that, in effect, the boy was thrown under his wheels before Pabón had an opportunity to stop his car.

But even if this passage of the testimony could be interpreted literally to mean what the district court found, we believe it gives a distorted view of the case to tear it out of its context and to rely solely on it, as the district court did, as representing Pabón's version of the accident, especially when Pabón in fact testified, as we have seen, in great detail as to his lack of fault. We cannot, in short, accept this summary statement of the district court as a fair analysis of Pabón's testimony.

proof the plaintiff adduced as to how the accident occurred. The defendant's proof on this question consisted solely of the testimony of Pabón, which has already been described. It is important in this connection to note that, on final analysis, Pabón was actually the only eyewitness to the accident.

We are satisfied that the record reasonably permits of only one conclusion: that Pabón was not negligent; that the negligence of Antongiorgi placed the plaintiff in a position of inextricable peril, for the results of which only Antongiorgi could be held responsible; and that Pabón was faced with a sudden and extraordinary emergency which he could not have possible foreseen, the result of which caused further harm to the plaintiff. "A motorist is not bound to anticipate the unexpected acts of persons not in the path of travel suddenly placing themselves there" (Huddy, Cyclopedia of Automobile Law, Vol. 5, p. 111; see *Collier* v. *Varino*, 96 So. 500 (La., 1923)). The net effect is that while the act of Pabón in striking the plaintiff intervened in the chain of causation begun by the negligence of Antongiorgi, Antongiorgi's negligence, legally speaking, was the sole cause of the accident. The bare statement of the district court, without any explanation whatsoever as to how it came to that conclusion—that "The only, immediate, and proximate cause of the accident was, then, defendant Pabón's negligence"— is wholly without foundation and we cannot accept it.[8]

We are, as always, exceedingly reluctant to reverse the

---

[8] Our conclusion in this respect is fortified by the nature of the testimony for the plaintiff. For example, none of the witnesses for the plaintiff actually *saw* the second accident; only the defendant Pabón testified from his own observation—the other witnesses *heard*, but did not *see*, what occurred. Also, Mercado, who was the principal witness for the plaintiff, wound himself up in a maze of contradictions: he testified that he saw the car of Antongiorgi approaching; but he also testified that he was facing toward San Germán, which meant he had his back to the car of Antongiorgi as it was approaching. Indeed, Beauchamp, a witness for the plaintiff, testified, as we have seen, that Mercado could not have seen that episode. And, the record demonstrates amply his inability to remember how things stood and that he "failed to notice" anything in detail.

judgment of the district court for alleged error in finding the facts. But for us to uphold the judgment herein would be in effect to create a rule of liability without fault in automobile accident cases. Some have urged the establishment of that rule by legislation, coupling it with compulsory insurance. Perhaps the day will come when our legislature will take that step. Meanwhile, we cannot permit a judgment to stand which is not supported by evidence of negligence on the part of the defendants.

■ We deem it appropriate to add a word concerning the manner in which the lower court found the amount of damages herein. The district court said the following:

"With respect to the injuries caused to the plaintiff in the accident, the Court has before it only the evidence submitted by the plaintiff. It is true that this evidence includes the injuries inflicted on the plaintiff by both automobiles; but in the amended complaint the injuries are separately alleged, and from the position occupied by the plaintiff when he received them, their nature, and the circumstances in which they were caused, it is logical that the most serious injuries, such as the fracture of the leg, the dislocation of the arm, and the wound and bruises on the chest, as well as many of the wounds and contusions on other parts of the body, were caused by defendant Farage's car."

Again there is nothing in the record to warrant this distribution of the injuries suffered by the plaintiff between the two episodes. The two incidents happened, as we have seen, almost simultaneously. No one, of course, examined the plaintiff after he was struck by Antongiorgi but before he was struck by Pabón. The testimony of the doctor did not touch this question. The record, in short, is barren of any testimony which might have led to a conclusion like that of the district court. We do not hold that it is never possible to distribute such injuries between two cars.[9] We hold

[9] "Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made." (Prosser, *supra*, at p. 327).

only that no testimony was adduced in this case on which to base such a distribution.

The plaintiff settled his case against Antongiorgi for $900;[10] and he failed to show any negligence on the part of Pabón. We are therefore compelled to reverse the judgment for the plaintiff and enter a new judgment for the defendants herein, Farage and Great American Indemnity Co.

Mr. Chief Justice Travieso did not participate herein.

---

[10] We are not concerned here with the problem of whether the release obtained by Antongiorgi covers only the damage inflicted by his car. However, in view of the fact that the rights of a minor are involved herein, we do not deem it inappropriate to point out that if it should be held that the release was exclusively for that purpose, the plaintiff may conceivable still have a cause of action against Antongiorgi on the ground that his negligence was the proximate cause of the injuries inflicted by the car operated by Pabón. See Prosser, supra, at p. 336. See also Eldredge, Modern Tort Problems, Ch. VIII, Culpable Intervention as Superseding Cause, p. 205 et seq.; McLaughlin, Proximate Cause, 39 Harv. L. Rev. 149, 178 et seq.; Bohlen & Harper, Torts, pp. 272–287.

Perhaps the best discussion of the many legal questions with which this case bristles, some of which we are not called on to answer here, is found in Prosser, Joint Torts and Several Liability, 25 Calif. L. Rev. 413. And cf. González v. White Star Bus Line, Inc., 53 P.R.R. 628, 635; Cubano v. Jiménez et al., 32 P.R.R. 155; Cruz et al. v. Frau, 31 P.R.R. 87.